## NORFOLK SOUTHERN R. CO. v. GUARANTY TRUST CO. OF NEW YORK.

(Circuit Court of Appeals, Fourth Circuit.
June 15, 1926.)

No. 2427.

Railroads ⬤⟳169—Mortgagor held entitled to have proceeds of railroad property sold, on which mortgage was first lien, expended on property also covered by prior mortgage for betterment of entire system.

Under railroad mortgage providing, inter alia, that the proceeds of any sale of property should be expended by the trustee upon the request of the railroad company either in the purchase of other property, otherwise for the benefit of the "mortgaged property," or in the purchase of secured bonds, where property on which the mortgage was a first lien was sold as no longer needed for railroad purposes, and the trustee received the proceeds, *held*, that the railroad company was entitled, to have a part expended in improvement of lines on which there was a prior mortgage which would add to the value and efficiency of the system as a whole; there being a large equity of redemption in the property covered by the prior mortgage.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Suit by the Norfolk Southern Railroad Company against the Guaranty Trust Company of New York, trustee. From a decree dismissing the bill, complainant appeals. Reversed and remanded.

W. B. Rodman and Jas. G. Martin, both of Norfolk, Va., for appellant.

William L. Parker, of Norfolk, Va. (Davis, Polk, Wardwell, Gardiner & Reed and Stetson, Jennings & Russell, all of New York City, on the brief), for appellee.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

WADDILL, Circuit Judge. This is a bill in equity, filed in the United States District Court for the Eastern District of Virginia, at Norfolk, having for its object the construction of a mortgage of the 15th of November, 1904, and a supplement thereto of the 21st of November, 1904, and the direction of the appellee trustee as to the payment of funds in its hands arising from the sale of a portion of the trust property. The District Court dismissed the complainant's bill, from which decree the appeal herein was taken. The parties will be herein referred to as complainant and defendant. The facts may be briefly stated as follows:

The property of the Norfolk Southern Railroad Company involved in the controversy consists of that portion owned prior to the execution of the first general mortgage of the 15th of November, 1904, and the supplement thereto, dated the 21st of November, 1904, and the portion acquired at the time of the execution of said supplemental mortgage. The former property, for the purpose of convenience, will be referred to as the "main line," and the latter as the "Cape Henry division." The main line at that time extended from Norfolk, Va., to Washington, N. C., via Mackeys and Plymouth, N. C., with a branch line from Mackeys, N. C., to Belhaven, N. C., and a line of railroad running from Norfolk, Va., to Cape Henry, Va., via Virginia Beach, Va., with a branch line to Munden, Va.; and the Cape Henry division extended from Norfolk, Va., to Virginia Beach, Va., via Cape Henry, Va., said line paralleling the main line from Cape Henry to Virginia Beach.

The mortgage of November 15, 1904, and the supplement of the 21st of November, 1904, will be treated as one instrument and hereinafter jointly referred to as the mortgage of 1904. The mortgage of 1904 is. a first lien on the Cape Henry division and the second lien on the main line; the latter being subject to the lien of the mortgage to the Atlantic Trust Company, trustee, dated the 2d of June, 1891. The defendant trust company, under the mortgage of 1904, has in its hands certain funds, to wit, $69,145.84, the proceeds of sale of property originally a part of the Cape Henry division, sold because the same was no longer needed for railroad purposes; and it is the desire of the complainant that a portion of the funds thus in said trustee's hands, to wit, $21,682.73, shall be used for ballast and upkeep of a part of its main line track between Washington and Plymouth, N. C., which complainant believes will greatly benefit and improve the entire property described in the mortgage of 1904, and which, with the exception of that of the Cape

Henry division, was also subject to the lien of the original mortgage of the 2d of June, 1891, to the Atlantic Trust Company, trustee.

Defendant declines to comply with complainant's request, inasmuch as the portion of the road proposed to be improved has a lien upon it, the mortgage of the 2d of June, 1891, to the Atlantic Trust Company, trustee, which is superior to that under which it holds the sum in question arising from the proceeds of the sale of a portion of the property of the Cape Henry division, and the latter submits the same to the decision of the court to determine the propriety thereof. The cause was submitted upon bill and answer, as there are no material disputes of fact, and the assignments of error present but this one issue and the correctness of the District Court's action in dismissing the bill. In this court the parties stipulated that the fair value of the property covered by the mortgage of 1891 exceeds $6,722,000, and the bonds outstanding under it amount to $1,655,100, thus showing a large equity of redemption over and above such mortgage.

There is much force in the position taken by defendant, and sustained by the District Court, especially in treating the transaction as one in which the proceeds of the sale of property belonging to separate owners, upon which there is a single lien, should be used for the improvement of property upon which there is a lien superior to that under which the trustee holds. This, however, in our judgment, is not the correct view of the situation here, having regard to the fact that it relates to liens upon mortgaged property of a single railway system, and that there is an ample equity in the property covered by the prior mortgage, and that the mortgage under which defendant holds as trustee covers the entire system and the moneys in hand arise from the sale of property no longer needed for railway purposes. The property sold it is true, was formerly a part of the Cape Henry division, as distinguished from the main line, as referred to herein, but the proceeds are no less property belonging to the complainant company, and subject to the mortgages properly placed thereon. The complainant is the owner of all the properties described in the earlier mortgage of the 2d of June, 1891, to the Atlantic Trust Company, trustee, and of all of the properties described in the mortgage of the 15th of November, 1904, and the supplement thereto the 21st of November, 1904, to the Guaranty Trust Company of New York, trustee, and holds said properties subject to the respec-tive liens of such mortgages or deeds of trust, and to all conditions and covenants set out in the several mortgages; and has acquired all of the rights and privileges of the Norfolk & Southern Railroad Company under said several mortgages. The properties now form an important railway system of several hundred miles in length, to which, since the acquisition of the title and rights under the foregoing mortgages, much additional trackage has been added.

To place upon the mortgage in question the interpretation contended for would largely tend to prevent the unification of the two railroad properties covered by the several mortgages—that is, the former main line and the Cape Henry division—and would be contrary to what was in the contemplation of the owners in acquiring and consolidating the two properties with a view of operating them as a whole. Obviously, the purpose was that the railroad should constitute a single unit, thereby increasing its value because of its ability to serve the public more economically. The railroad was conveyed as a whole, and so referred to and treated in the mortgage, and it does violence to the meaning of the instrument to say that there was any purpose to separate or designate any particular part, piece, or parcel of such property. The properties were all united in the name of a railroad designed and intended for the purpose of transporting freight and passengers, and service to the public as a common carrier. Where such property is covered by two mortgages, one upon one part of the railroad and the other upon the whole system, it is manifest that the part covered by both mortgages cannot be benefited and improved without adding to the value of the piece upon which there is only a single mortgage.

The covenants of the supplemental mortgage of the 21st of November, 1904, make it entirely clear that the property acquired from the Chesapeake Transit Company became a part and parcel of the general system of the road, and subject to its general mortgage of the 15th of November, 1904. The specific provision in the conveyance of said property is as follows:

"Upon the express condition that the rights of the railroad company and of the trustee, respectively, in and to the said property shall be in all respects as provided in said first general mortgage of the railroad company, with the same force and effect as if said property had been owned by the railroad company at the time of the execution of the said first general mortgage and then subject to the lien thereof."

It is quite apparent that the very contingency that has arisen here was foreseen in acquiring the Cape Henry division aforesaid, and in the execution of the mortgage and supplemental mortgage of the 15th and 21st of November, 1904, as provision was made for the sale and disposition of property of the Cape Henry division found to be unnecessary for railroad purposes. Likewise the subsequent disposition of the proceeds of the sale of the property so disposed of was amply provided for. The provision in this respect was as follows:

"Any property substituted for or acquired with the proceeds of any sale of property covered by this mortgage shall ipso facto become and be subject immediately to the lien hereof, as if the same had been originally conveyed hereby, and, if the trustee shall so request, shall be conveyed by the railroad company to the trustee, to be held upon the trusts hereby created. And the proceeds of property sold or otherwise disposed of shall be received by the trustee and by it expended from time to time upon the request of the railroad company either in the purchase of other property required by the railroad company, in which case the property so purchased shall immediately become and be subject to the lien hereof, or shall be expended otherwise for the benefit of the mortgaged property, or in lieu thereof shall be applied by the trustee in its discretion to the purchase in open market of one or more of the bonds hereby secured; and all bonds so purchased shall be canceled immediately and shall cease to be entitled to the benefit of the security hereby provided."

From this provision it will be seen that the proceeds of the property sold or otherwise disposed of should be received by the trustee, and by it expended from time to time "(a) upon the request of the railroad company either in the purchase of other property required by the railroad company, in which case the property so purchased shall immediately become and be subject to the lien thereof, or (b) shall be expended otherwise for the benefit of the mortgaged property, or (c) in lieu thereof shall be applied by the trustee in its discretion to the purchase in open market of one or more of the bonds hereby secured, and all bonds so purchased shall be canceled immediately and shall cease to be entitled to the benefit of the security hereby provided."

Upon the pleadings herein, it does not appear either that any request was made by the railroad of the trustee for the purchase of other property, or that the trustee expended any sum on account of the purchase of mortgage bonds, but that the complainant company did make application to the trustee for the expenditure of a portion of the money in hand arising from the sale of the property disposed of, and that the trustee declined to comply with the application, on the ground that it was without power to do so, and it is as to the existence of the power and the propriety of its exercise that relief is asked.

It seems to us, after due consideration, that the expenditure asked for by the railroad company should be made by the trustee, and that it is entirely reasonable and proper so to do; that there is nothing in the mortgage and lien under which said property is held that operates to prevent the expenditure of the sum in question for the betterment of the trust property; that the language "mortgaged property," as used in the first general mortgage of the 15th of November, 1904, includes the entire line of railroad covered by the mortgage, in so far as the same is available for the protection of those secured by said mortgage, whether the mortgage be a first or second lien thereon, and that, under said mortgage and the supplemental indenture, the trustee is authorized, upon the request of the railroad company, to expend the funds in its hands in making additions and betterments for the benefit of the line of railroad upon any part of the road, irrespective of whether it be that part on which the first general mortgage of the 15th of November, 1904, is a first or second lien.

The decree of the District Court will be accordingly reversed, and the cause remanded to that court to be proceeded in in conformity with the views herein expressed, and with costs to the complainant, the same to be paid out of any funds in its hands belonging to the trust estate.

Reversed.